UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARIAN MARTIN, SHARON BURNETT-
GAREAVE, CLINTON CELESTAIN, DIEGO
CORTAZAR, MUHAMET DEMAJ, CHARLES
HARRIS, SANDRA LOTTIHALL, JOSEPH
LUZIER, SHAWN MCCOY, SAMUEL VAVALA,
CHRISTINE HOGERTY, KIMBERLY
ALLENSWORTH, LINDA K. ADAMS, JEFF
ADAMS, MARK GRAHAM, KAREN RUBINO,
MARTA VANDALE, MARY SCINTO,
SHAFFRONA PHILLIPS, BRIAN VILLEMAIRE,
ROLAND ROSS, ALTHEA CALE, CHRIS
SWANSTON, JENNIFER PETERS, ROBERT
RAHSMAN, ALFRED MITCHELL, JR., HARRY
EVANS, TOMMY HALL, LINDA HALL,
WILLIAM SCHAUER, VICTORIA SHEAF, SONJA
SHEARER, RONALD SCHWARBY, WILLIAM
NYCE, KAROL KARIN SCHWARBY,
SHARNEICE HERRON, NKEMJIKA IKE, MARY
LEE KRAUSHAAR, WARNER SERRANO, EDWIN
KIPU, JENNIFER HEYING, TREVEN FARROW,
THERESA QUINN, LOUISE BRANDON,
ABRAHAM SCOTT, JACQUELYN
WILDERMOTH, JUAN LOZADA, MAXIMINO
TENORIO, ROBERT L. PHILLIPS, RODNEY
MIGLIORE, DENNIS ARTIS, PAUL BOUCHER,
LYNN YAICHNER, LORI ASARO, LISA
ROBINSON, MURIELLE ERASME, DONNIE
BARNES, GERALD BEAMON, DAVID
COPELAND, LARRY HOPSON, VENSON SMITH,
JOHN SWAYZE, JOSEPH RECCO, WILLIAM
BENNETT, CHRISTIN DAMRON, JAKAY
DAVIES, LILIAN DURAN, KAREN HOLLOWAY,
DONALD MOBLEY, GARY ROULETTE,
BRADLEY EVANS, WAYNE JOHNSON,
HENRIETTA DEEL, RON MCDANIELS, MARK
GRZELAK, RAYMOND H. FRAHM III,
FREDERICK BROOKS, OUIDA MCINNIS, JOHN
JONES, KENNETH W. ABERNATHY, PATRICIA
CRAMMER, DAVID WYNN, KENNETH
DELLETT, PATRICK D'ALESSIO, WILLIAM
DONOHOE, ANGELICA SANTANA, ANTHONY
SMITH, ROBERT KLAGES, DIANA RODRIGUEZ,
DAWN SADLER, BRANDA HALL, ISABELA

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

SOLIA, CAROL THOMPSON, MARY BETH
PETROSH, CHRISTIAN FORD, ANTHONY SAN
NICOLAS, ANTHONY K. JONES, ROBERT
COULTER, JR., RAMON GOMEZ, ROBERT
KISTLER, WILLIAM LACOMCHEK, ROBERT
QUINN, MARIE MCAFEE, JAMES T. HILLIAN,
BRODY BOHN, ARTHUR GIPSON, RODGER
GULLEY, MIKE LEFFEW, MARIA MUNOZ,
CHARLOTTE FALL, GLEN WALLING, ANNA
DUARTE, CHRISTINE CHAVARRIA, GENE
MAJOR, DONALD SLAYTON, KELLY WAY,
NURAY KARATAS, JAN MILLER, DARIUS
ROBINSON, STEPHANIE WOODSON, JAE
AMES, MARTIN E. ROONEY, TASHA SHIPMAN,
BERNADETTE CHAPMAN, MIKKI KELLER,
JOHN MILLER, TAMI C. HAMMOND, LORIN
CHOJNACKI, ROGER CARTER, & JOHN ROES 1-
100,

Plaintiffs,

-against-

BANK OF AMERICA, N.A., PNC BANK, N.A.
D/B/A PNC MORTGAGE, SELECT PORTFOLIO
SERVICING, INC., JPMORGAN CHASE BANK,
N.A., GREEN TREE SERVICING, LLC,
FLAGSTAR BANCORP, INC. D/B/A FLAGSTAR
BANK, BMO HARRIS BANK, N.A., SETERUS,
INC., FIFTH THIRD BANK, ONEWEST BANK,
FSB, S/B/M INDYMAC BANK, FSB, & BAYVIEW
LOAN SERVICING, LLC,

Defendants.
----------------------------------------------------------------X

## **INTRODUCTION**

Plaintiffs Martin, *et al*, bring this action against Defendants Bank of America, N.A., *et al*,

for a variety of illegal actions pertaining to the creation and servicing of home mortgage loans.

Among the causes of action brought, Plaintiffs argue that they: (a) sought a loan modification

agreement through Defendants, its agents, and successors-in-interests as servicers of Plaintiffs'

loans but their various requests and applications were rejected, without proper justification, (b)

were subjected to predatory lending practices inducing Plaintiffs to accept unduly burdensome loans, including gross misrepresentations and various failures to disclose information, and (c) were charged monthly mortgage payments without a legal basis to benefit from those payments. Plaintiffs allege upon information and belief common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent concealment, fraud for demanding and collecting monthly note payments under false pretense, unjust enrichment, and fraudulent inducement, and statutory violations under various state consumer protection statutes, the Federal Truth In Lending Act and the Real Estate Settlement Procedures Act.  Plaintiffs seek declaratory and injunctive relief, as well as damages, restitution and costs

## STATEMENT OF FACTS

### A)  Defendants' Fraudulent Loan Modification Process

1.      For a period ranging from months to several years prior to the commencement of this action, Plaintiffs' mortgages have been serviced by Defendants.  As a result of the severe economic downturn felt by so many in this country, Plaintiffs had fallen behind on their monthly mortgage payments and went into default.

2.      Due to the individual hardships felt by them, Plaintiffs inquired about mortgage assistance and requested loan modifications through Defendants, which were only allowed once Plaintiffs went into default.

3.      Defendants offered loan modifications to Plaintiffs and provided a modification application package to Plaintiffs pursuant to the terms of their offer.  This package required Plaintiffs to provide allegedly necessary documentation to process the modifications as one of their obligations of the modification agreement.

4.      Defendants explained to Plaintiffs that following the submission and review of a completed modification package, Plaintiffs would be given terms to make payments as part of a trial modification.  If Plaintiffs' made the necessary monthly payments under the terms of the trial modification, a permanent modification would be granted.

5.      Plaintiffs accepted the loan modification offers and worked to meet the terms required of them, expecting Defendants to be bound to perform their obligation of granting a permanent modification.

6.      Plaintiffs either provided all of the requested documentation in support of their loan modification application to Defendants and met all the conditions precedent pursuant to a trial modification offer, or attempted to in good faith, but faced substantial interference from Defendant.

7.      In these latter instances, Plaintiffs could not possibly comply with their conditions precedent because Defendants put in place procedural safeguards to make the modification process as onerous and complicated as possible, even going so far as providing conflicting information to Plaintiffs regarding what was received or still needed.

8.      Even in instances where Plaintiffs provided everything required according to Defendants' initial document request, Defendants still sent missing documentation requests which often included documents previously sent by Plaintiffs.  Plaintiffs continued to provide the requested documents to Defendants despite having already submitted on multiple prior occasions.

9.      Upon information and belief, Defendants' missing document requests constituted a policy to interfere with and overly burden Plaintiffs from complying with modification terms or was a result of deficient protocols within Defendants' loan modification operations.

10.     One of Defendants' loss mitigation representatives would often give inconsistent information from another when handling Plaintiffs' inquiries.

11.     In cases where trial terms were not given, Defendants either gave no explanation or alleged that Plaintiffs did not provide the necessary documentation for processing or review. This was only been true because of the conflicting reports and inconsistent status updates given to Plaintiffs, or simply a failure of Defendants' loss mitigation representatives to adequately conduct document intake.

12.     When Plaintiffs were able to overcome Defendants' obstacles and meet the conditions of the modification agreement by providing sufficient documentation according to Defendants, they were given terms to make modification payments on a trial basis.  Plaintiffs made the required payments under the trial terms when it was offered.

13.     Following Plaintiffs' completion of the conditions precedent, they ultimately learned, often only after inquiring, that a permanent modification was not provided.  In some instances, Defendants provided no justification for their breach of contract.

14.     Other times, Defendants fabricated reasons for modification rejections.  One such excuse told to Plaintiffs was that certain documents necessary to support the loan modification were missing and/or had not been received by Defendants, despite the modification package being complete enough that trial terms were provided to Plaintiffs.

15.     Upon information and belief, when such improper justifications occurred, Defendants merely offered trial terms and encouraged Plaintiffs to make these payments in order to strip as much remaining equity from them, knowing that Plaintiffs were pre-destined for a permanent modification rejection.

16.     If a permanent modification was granted, it included such disadvantageous terms that Defendants basically rendered Plaintiffs' performance impossible.

**B) Defendants' Conflicts of Interest**

17.     For a period ranging from months to several years prior to the commencement of this action, Plaintiffs' mortgages have been serviced by Defendants.  As a result of the severe economic downturn felt by so many in this country, Plaintiffs had fallen behind on their monthly mortgage payments and went into default.

18.     Upon information and belief, Defendants have insurance or other contractual relationships in which losses through foreclosure or short sale (i.e., when the homeowner-mortgagor loses his/her home) are paid in whole or in part to Defendants, in addition to the amount they realize on a foreclosure sale or short sale.  The loss is determined by the outstanding amount of the loan as distinguished from what Defendants may have paid for the loan.

19.     Upon information and belief, this insurance arrangement has been the motivation for Defendants to refuse to comply with the loan modification agreements entered into with qualified homeowners such as the Plaintiffs.  Defendants only receives reimbursements for its "losses" if the mortgaged property is sold through foreclosure sale or short sale, and not if the loan is modified.

20.     The Plaintiffs have a financial hardship resulting from the deteriorating economy, the decline in market and rental value of real estate generally and the Plaintiffs' real property specifically, as well as a related reduction in income.  Starting months ago, the Plaintiffs have been unable to service their existing notes, which are backed by the mortgage securities held by Defendants, based on the outstanding principal amount of their notes.  Defendants have been

aware of this at all relevant times through information provided by the Plaintiffs to Defendants or its agents and successors-in-interest.

21.     The Plaintiffs have the capacity to make monthly payments based on a note if it were restructured with a principal amount equal to the present value of the property and a lower interest rate (equal to the present market rate of interest).  As such, Plaintiffs should have an option to do so, which would give Defendants an amount in value equal to or greater than the amount it can lawfully realize through the sale of the property securing the note.

22.     The Plaintiffs have the financial capacity to service such a restructured note.

23.     The Plaintiffs are willing and able to pay to Defendants and/or any successors in interest the full amount which it/they are lawfully able to obtain through sale of the property securing their current notes.  Defendants' failure to provide a right of first refusal or offer for the Plaintiffs to retain ownership of their property under these terms is a predatory lending practice and a breach of the implied covenant of good faith and fair dealing and industry custom and usage to negotiate workout agreements in good faith with financially troubled borrowers.

24.     Such predatory lending consists of Defendants' failure to offer the Plaintiffs an opportunity to remain in their mortgaged properties through a loan modification agreement based on the present value of the property and the present market rate of interest.  Modification terms should be such that Plaintiffs could afford them and commensurate with what Defendants would obtain through foreclosure sales of the individual Plaintiffs' properties.

25.     Defendants has created various conflicts of interest as part of its loss-sharing agreements, giving it no incentive to negotiate with the Plaintiffs in good faith including:

        A. Defendants' desire to have the Plaintiffs' homes sold through either foreclosure auction or short sale, which would enable Defendants to obtain

payment on a type of insurance-like contract through a credit default swap or other derivative, which pays the Defendants a substantial percentage of any loss suffered by the Defendants, but only if the mortgaged property is sold. These credit default swaps and insurance-like practices occurred with little to no transparency.  They are predatory and justification for terminating any interest that Defendants may have in the Plaintiffs' notes;

B. To evade the requirement under any contract that Defendants have with the Plaintiffs to deal with them fairly and in good faith;

C. To evade the custom and usage in the banking industry to negotiate in good faith for a workout agreement (or loan modification agreement) with the Plaintiffs under a financially-troubled loan;

D. To turn Defendants' inventory of loans into loans which are more likely to default and go into foreclosure and sale or short sale, to obtain payment of the illegal insurance taken out against the interests of the Plaintiffs and other homeowner/mortgagors.

E. To make this loan, even if it is not securitized, into a loan with some of the consequences of a securitized loan, including the recovery of illegal insurance on losses established only through sale of the mortgaged property, instead of trying to save the Plaintiffs from losing their homes.

26.    The insurance arrangements (involving credit default swaps) described above were not registered as insurance in any state, and were illegal for a variety of reasons including the lack of an insurance interest as to at least part of the insurance.  In effect, Defendants were

incentivized to force the Plaintiffs towards foreclosure or short sale to collect an additional, secret amount from the credit default swaps or similar derivatives.

27.     Unbeknownst to the Plaintiffs, they were denied the opportunity to deal with a party who could conduct good faith negotiations with respect to a workout or loan modification agreement with Defendants, in breach of industry custom and usage.

28.     Upon information and belief, Defendants have had, and continues to have, a fraudulent loan modification program, by pretending to offer the possibility of a loan modification agreement to the Plaintiffs and other homeowners.  Defendants are simultaneously requiring the Plaintiffs to go into default to enable Defendants to pursue foreclosure or threaten to foreclose against the same homeowners.

29.     This is part of a false and misleading "dual-track" process used by Defendants to lure mortgagor homeowners into defaulting on their mortgages and any foreclosure actions. Defendants require homeowners to go into default, to supposedly work with them for loan relief. Defendants then deny applications for loan modification and sells the mortgaged property without judicial proceedings in most states, or after drawing homeowners into defaulting in foreclosure actions against them in the other states.

30.     In this way, Defendants acquires a mortgaged residential property at a distress price substantially lower than the actual market value for the mortgaged property, to cash in on the secret, illegal insurance arrangements.  This encourages Defendants to remove Plaintiffs from their homes through sale of the property rather than by giving homeowners a needed and deserved loan modification agreement to keep them in their property.

31.     Upon information and belief, the dual-track process that Defendants have pursued, continues to pursue, or would pursue, in its business dealings with the Plaintiffs is not,

9

and is not intended as, a good faith attempt to offer and negotiate a loan modification agreement. Instead, it is a ruse used by Defendants to make the Plaintiffs and others similarly situated believe that there is a fair opportunity for them to obtain a reasonable loan modification agreement when in fact there is no such opportunity.

32.     Upon information and belief, the activities of Defendants are comparable to the activities of the bank and servicer described in a court decision, *Indymac Bank F.S.B. v. Yano-Horoski*, 2009 NY Slip Op 52333(U) (Sup. Ct., Suff. Co., 11/19/09, Justice Spinner), where the bank demonstrated "…no good faith intention whatsoever of resolving this matter in any manner other than a complete and forcible devolution of title from [the homeowner]."

33.     Defendants had no intention of complying with the loan modification agreements and instead looked to create a default, to result in the sale of Plaintiffs' properties, for the reasons set forth above.

34.     Upon information and belief, Defendants have breached their agreements by failing to modify Plaintiffs' loans after Plaintiffs met all conditions precedent to Defendants' offer.

35.     Upon information and belief, Defendants have and apply no standards for determining who will be granted Home Affordable Modification Program (hereinafter "HAMP") loan modifications (pursuant to the Helping Families Save Their Homes Act of 2009) by Defendants, and this applies as well to their in-house loan modification programs.

36.     Upon information and belief, Defendants have and apply no standards for the awarding of payouts to homeowners pursuant to the subsequent settlements with the Federal government in which modification-related wrongdoing were found following the establishment of HAMP.

37.     The dual-track process is designed to create the appearance that Defendants were working toward a resolution of the financial problems of Plaintiffs and other homeowners through a loan modification agreement.   However, behind the scenes, Defendants were aggressively pursuing or planning to pursue foreclosure and sale.

38.     Defendants led the Plaintiffs and others similarly situated to believe that there was hope for a loan modification agreement and no threat of foreclosure.   But this is not true. Defendants lulled the Plaintiffs and others into a false sense of security (and deterred them from seeking alternative refinancing for an extended period in which to sell their property at the highest price) by misrepresenting that there was hope for a reasonable modification agreement when in fact there was no hope.

39.     Defendants had no intention of granting any loan modification agreement that would possibly assist Plaintiffs in a meaningful matter in the vast majority of cases where applicants were qualified, and planned to use the default to sell the Plaintiffs' property instead of permitting the Plaintiffs to remain in their property through a reasonable loan modification agreement.

40.     This dual-track process is part of Defendants' national business policy for dealing with foreclosure actions in the judicial foreclosure states, and is the subject of various foreclosure-fraud lawsuits in other states.

**C)  Defendants' Predatory Lending Behavior and Loan Review Process**

41.     A major aspect of Defendants' deceptive and predatory lending practices occurred during the creation of Plaintiffs' loans.   Defendants had a mendacious practice of offering loans with terms that would never have been accepted by Plaintiffs based on their financial means, had it not been for Defendants' misrepresentations of material terms.

42.     To further induce Plaintiffs to accept certain loans pushed upon them, Defendants made false assurances to Plaintiffs that housing prices would continue to rise and general misrepresentations as to the stability of the housing market.   Despite these statements, Defendants were already preparing for a crash, though its dual-track process; a crash Defendants played a large part in due to their predatory lending practices.

43.     At the time of Plaintiffs' loans inception, their actual financial documents were insufficiently relied upon as part of their loan applications from Defendants.   Defendants consistently preyed upon Plaintiffs by providing unsuitable loans based upon the Plaintiffs' current income at the time, as well as future, expected income.

44.     Upon information and belief, Plaintiffs' applications served as after-the-fact justification for Defendants making the loans once they had each already been individually approved.

45.     When Plaintiffs applied for their loans, Defendants often did not require them to provide sufficient documentation, such as pay stubs, bank statements, or tax returns, to show what the income was.   Instead, Defendants just accepted on the day of the closing, the loan applications without offering the proper due diligence required to determine whether Plaintiffs were qualified to receive each of their individual loans.

46.     Defendants were lending based on terms not commensurate to Plaintiffs' actual income.   It was a tolerated practice by Defendants to exaggerate incomes of certain Plaintiffs because Defendants' underwriting guidelines allowed it to lend more money.   This let Defendants to garner more interest and generate more fees than would otherwise have been possible.

47.     Defendants also allowed loan applications to be based on artificially inflated appraisal for the homes.  This occurred due to an absence of strict underwriting protocols, and helped artificially drive up the market which Defendants profited from.

48.     As part of this cursory loan application review process, Defendants either negligently or willfully approved Plaintiffs for loans when it should have been apparent that default was a likely outcome.

49.     Defendants offered and encouraged certain loans to Plaintiffs, while simultaneously assuring that Plaintiffs at any time could easily sell their homes or refinance for more favorable terms, if they ever did find themselves in a position where the loan became too difficult to maintain.  In doing this, Defendants were knowingly misrepresenting that the housing market would continue to grow at a similar rate, while simultaneously hedging against that fact.

50.     Defendants had sufficient information based on its own contributions to the artificially created growth in the real estate market that the housing market was due for a severe crash.

51.     However, as Plaintiffs became embattled with these oppressive obligations on homes with values that dropped sharply after the country-wide depression, Defendants benefitted through their concealed dual-track system.

**D) Defendants' Failure to Disclose**

52.     Of the type of loans offered by Defendants, there existed fixed-rate loans, and adjustable-rate pay option loans, which could contain a negative amortization feature.  Despite the varying nature of the offered loans, the individual implications of each type of loan were not adequately conveyed to the Plaintiffs, especially their long-term ramifications.

53.    Defendants deceitfully valued a loan's profitability over Plaintiffs' ability to avoid foreclosure.

54.    These types of adjustable rate loans are particularly profitable for Defendants, and upon information and belief, Defendants used incentives to motivate its internal personnel to market these loans.  Through increased compensation, loan officers were encouraged to sell adjustable rate mortgage with higher margins or above-par rate, which ultimately put borrowers into higher cost loans.

55.    Regarding the adjustable rate loans, Defendants stressed the low required payments in the loan's early years, and hid the inevitable payment shock felt by the borrower when the payments increased.  This was done despite Defendants knowing that Plaintiffs' income would not increase in a similar fashion.

56.    Defendants also marginalized hpw the negative amortization feature could make the loan difficult to refinance or that there were significant prepayment penalties.

57.    Such negatively amortized loans allowed Plaintiffs to pay less than the full accrued interest during the loan's early years, and unpaid interest is added to the loan principal so that the principal increases, instead of it decreasing as normally occurs with a mortgage loan.

58.    Ultimately, these types of loans quickly become more and more expensive for the borrower, until they could not be afforded, yet Plaintiffs entered into these agreements because the implications were not adequately disclosed to them by Defendants.

59.    Upon information and belief, Plaintiffs were steered into loans not suitable for themselves because of their individual financial situations.  Defendants should have advised against these mortgages if the loan applications were reviewed with proper diligence and care.

14

60.     Instead, Defendants relied on misrepresentations and deceitful practices while maintaining an illegal incentive program that provided higher commissions to loan officers who pushed these loans.

61.     The omission of important information in Defendants' sales pitches put Plaintiffs in a far worse position had they not taken a loan from Defendants.  Plaintiffs became saddled with onerous terms that quickly became unaffordable for them either from undisclosed payment information like escrow amounts or from variable payment terms.

62.     Defendants were very clearly engaged in a scheme designed to maneuver Plaintiffs into a loan that they ultimately were not qualified for simply with the goal of obtaining greater profits through adjustable rates, negative amortizations, or higher rates than could be afforded, because they all allowed for greater interest amounts to Defendants.

63.     Upon learning of various predatory practices and potentially illegal abuses, Plaintiffs submitted Qualified Written Requests (hereinafter "QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 USC § 2605(e).

64.     In these QWRs, Plaintiffs formally disputed the validity of their current debts with Defendants and requested all available information pertaining to their loans to determine what misrepresentations and failures to disclose occurred, as well as whether the loan origination, accounting of payments and fees, and ownership details had been proper.

65.     To date, and far beyond the sixty days required under Section 6 of RESPA, Defendants have failed to provide any of the documentation requested in the QWRs or attempt in any way to resolve the issues Plaintiffs complained.  Defendants also have not provided an adequate reason for its refusal to do so.

## JURISDICTION AND VENUE

66.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

67.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein took place in New York.  Defendants are authorized to do business in New York and have sufficient minimum contacts with New York through the promotion, marketing and servicing of loans in New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

68.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(c), because Defendants transacts business, maintains offices, and is otherwise found within this District; and the Defendants' unlawful acts giving rise to some of Plaintiffs' claims occurred, and a substantial portion of the affected trade and commerce described herein, have been carried out in this District.

## THE PARTIES

69.     Plaintiff Marian Martin is an individual and a resident of the State of New York. Plaintiff Martin owns the premises known as and located at 278B Jewett Avenue, Staten Island, New York 10302.  Plaintiff Martin executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

70.     Plaintiff Sharon Burnett-Gareave is an individual and a resident of the State of New York.  Plaintiff Burnett-Gareave owns the premises known as and located at 4245 Gunther Avenue, Bronx, New York 10466.  Plaintiff Burnett-Gareave executed a promissory note to

Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

71.     Plaintiff Clinton Celestain is an individual and a resident of the State of New York.  Plaintiff Celestain owns the premises known as and located at 144-50 176th Street, Jamaica, New York 11434 and 144-54 176th Street, Jamaica, New York 11434.  Plaintiff Celestain executed two promissory notes to Bank of America, N.A. which are each secured by a mortgage against these premises.  Said mortgages are currently serviced by Defendant Bank of America, N.A.

72.     Plaintiff Diego Cortazar is an individual and a resident of the State of New York. Plaintiff Cortazar owns the premises known as and located at 38 Vincent Place, Lynbrook, New York 11563.  Plaintiff Cortazar executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

73.     Plaintiff Muhamet Demaj is an individual and a resident of the State of New York.  Plaintiff Demaj owns the premises known as and located at 2322 Matthews Avenue, Bronx, New York 10467.  Plaintiff Demaj executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

74.     Plaintiff Charles Harris is an individual and a resident of the State of New York. Plaintiff Harris owns the premises known as and located at 307 E. Prospect Avenue, Mt. Vernon, New York 10553.  Plaintiff Harris executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

75.     Plaintiff Sandra Lottihall is an individual and a resident of the State of New York. Plaintiff Lottihall owns the premises known as and located at 54 Highland Place, New York 11208.  Plaintiff Lottihall executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

76.     Plaintiff Joseph Luzier is an individual and a resident of the State of New York. Plaintiff Luzier owns the premises known as and located at 100 Bells Brook Road, Genesse, New York 14721.  Plaintiff Luzier executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

77.     Plaintiff Shawn McCoy is an individual and a resident of the State of New York. Plaintiff McCoy owns the premises known as and located at 1085 Ardmore Road, Baldwin, New York 11510.  Plaintiff McCoy executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

78.     Plaintiff Samuel Vavala is an individual and a resident of the State of New York. Plaintiff Vavala owns the premises known as and located at 6064 East Old State Road, Schenectady, New York 12303.  Plaintiff Vavala executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

79.     Plaintiff Christine Hogerty is an individual and a resident of the State of Alabama. Plaintiff Hogerty owns the premises known as and located at 6789 Mighty Oaks Drive, Gulf Shores, Alabama 36547.  Plaintiff Hogerty executed a promissory note to PNC Bank, N.A.,

which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant PNC Mortgage, a Division of PNC Bank, N.A.

80.     Plaintiff Kimberly Allensworth is an individual and a resident of the State of Arkansas.  Plaintiff Allensworth owns the premises known as and located at 1090 Hwy 27 South, Nashville, Arkansas 71852.  Plaintiff Allensworth executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

81.     Plaintiff Linda K. Adams is an individual and a resident of the State of Connecticut.  Plaintiff L.K. Adams owns the premises known as and located at 335 Lebanon Avenue, Colchester, Connecticut 06415.  Plaintiff L.K. Adams executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

82.     Plaintiff Jeff Adams is an individual and a resident of the State of Connecticut. Plaintiff J. Adams owns the premises known as and located at 335 Lebanon Avenue, Colchester, Connecticut 06415.  Plaintiff J.  Adams executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

83.     Plaintiff Mark Graham is an individual and a resident of the State of Connecticut. Plaintiff Graham owns the premises known as and located at 83 Old Farms Road, Cheshire, Connecticut 06410.  Plaintiff Graham executed a promissory note to Select Portfolio Servicing, Inc., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Select Portfolio Servicing, Inc.

84.     Plaintiff Karen Rubino is an individual and a resident of the State of Connecticut. Plaintiff Rubino owns the premises known as and located at 163 Brown Road, Brooklyn, Connecticut 06234.  Plaintiff Rubino executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

85.     Plaintiff Marta Vandale is an individual and a resident of the State of Connecticut. Plaintiff Vandale owns the premises known as and located at 23 Bartlett Meadow Drive, Dayville, Connecticut 06241.  Plaintiff Vandale executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

86.     Plaintiff Mary Scinto is an individual and a resident of the State of Connecticut. Plaintiff Scinto owns the premises known as and located at 48 Northrop Road, Bethany, Connecticut 06524.  Plaintiff Scinto executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

87.     Plaintiff Shaffrona Phillips is an individual and a resident of the State of Connecticut.  Plaintiff Phillips owns the premises known as and located at 107 Colony Street, Hamden, Connecticut 06518.  Plaintiff Phillips executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

88.     Plaintiff Brian Villemaire is an individual and a resident of the State of Connecticut.  Plaintiff Villemaire owns the premises known as and located at 41 Wall Street, Middletown, Connecticut 06457.  Plaintiff Villemaire executed a promissory note to Bank of

America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

89.     Plaintiff Roland Ross is an individual and a resident of the State of Delaware. Plaintiff Ross owns the premises known as and located at 1 Wellington Drive, Newark, Delaware 19702.  Plaintiff Ross executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

90.     Plaintiff Althea Cale is an individual and a resident of the State of Delaware. Plaintiff Cale owns the premises known as and located at 36 Valley Forge Court, Delaware 19702.  Plaintiff Cale executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

91.     Plaintiff Chris Swanston is an individual and a resident of the State of Delaware. Plaintiff Swanston owns the premises known as and located at 151 Almonds Way, Magnolia, Delaware 19962.  Plaintiff Swanston executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

92.     Plaintiff Jennifer Peters is an individual and a resident of the State of Delaware. Plaintiff Peters owns the premises known as and located at 515 Lennox Road, Wilmington, Delaware 19808.  Plaintiff Peters executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

93.     Plaintiff Robert Rahsman is an individual and a resident of the State of Delaware. Plaintiff Rahsman owns the premises known as and located at 33164 West Chesapeake, Lewis, Delaware 19958.  Plaintiff Rahsman executed a promissory note to JPMorgan Chase Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

94.     Plaintiff Alfred Mitchell, Jr. is an individual and a resident of the State of Delaware.   Plaintiff Mitchell owns the premises known as and located at 10 Regal Court, Newark, Delaware 19713.  Plaintiff Mitchell executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

95.     Plaintiff Harry Evans is an individual and a resident of the State of Florida. Plaintiff Evans owns the premises known as and located at 8122 Wheystone Drive, Webster, Florida 33597.  Plaintiff Evans executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

96.     Plaintiff Tommy Hall is an individual and a resident of the State of Florida. Plaintiff T. Hall owns the premises known as and located at 2043 NW 8th Street, Pompano Beach, Florida 33069.  Plaintiff T. Hall executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

97.     Plaintiff Linda Hall is an individual and a resident of the State of Florida. Plaintiff L. Hall owns the premises known as and located at 2043 NW 8th Street, Pompano Beach, Florida 33069.  Plaintiff L. Hall executed a promissory note to Bank of America, N.A.,

which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

98.     Plaintiff William Schauer is an individual and a resident of the State of Florida. Plaintiff Schauer owns the premises known as and located at 4212 NW 59th Avenue, Gainesville, Florida 32653.  Plaintiff Schauer executed two promissory notes to Green Tree Servicing, LLC, which are secured by mortgages against this premises.  Said mortgages are currently serviced by Defendant Bank of America, N.A.

99.     Plaintiff Victoria Sheaf is an individual and a resident of the State of Florida. Plaintiff Sheaf owns the premises known as and located at 4603 SE 1st Avenue, Cape Coral, Florida 33904.  Plaintiff Sheaf executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

100.     Plaintiff Sonja Shearer is an individual and a resident of the State of Florida. Plaintiff Shearer owns the premises known as and located at 1454 Bertha Street, Jacksonville, Florida 32218.  Plaintiff Shearer executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

101.     Plaintiff Ronald Schwarby is an individual and a resident of the State of Florida. Plaintiff R. Schwarby owns the premises known as and located at 3101 S. Ocean Drive, Apt. 1904, Hollywood, Florida 33019.  Plaintiff R. Schwarby executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

102.    Plaintiff William Nyce is an individual and a resident of the State of Florida. Plaintiff Nyce owns the premises known as and located at 4725 40th Street N.E., Naples, Florida 34120.  Plaintiff Nyce executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

103.    Plaintiff Karol Karin Schwarby is an individual and a resident of the State of Florida.  Plaintiff K. Schwarby owns the premises known as and located at 3101 S. Ocean Drive, Apt. 1904, Hollywood, Florida 33019.  Plaintiff K. Schwarby executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

104.    Plaintiff Sharneice Herron is an individual and a resident of the State of Georgia. Plaintiff Herron owns the premises known as and located at 13 Kelly Lane, Hinesville, Georgia 31313.  Plaintiff Herron executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

105.    Plaintiff Nkemjika Ike is an individual and a resident of the State of Georgia. Plaintiff Ike owns the premises known as and located at 5655 Walnut Mill Lane, Hiram, Georgia 30141.  Plaintiff Ike executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

106.    Plaintiff Mary Lee Kraushaar is an individual and a resident of the State of Georgia.  Plaintiff Kraushaar owns the premises known as and located at 3280 Pate Drive, Snellville, Georgia 30078 and 2937 Berry Road, Loganville, Georgia 30052.  Plaintiff Kraushaar

executed promissory notes to Bank of America, N.A. and Flagstar Bancorp, Inc. d/b/a Flagstar Bank, which are respectively secured by mortgages against these two premises.  Said mortgages are currently serviced by Defendants Bank of America, N.A. and Flagstar Bancorp, Inc. d/b/a Flagstar Bank.

107.    Plaintiff Warner Serrano is an individual and a resident of the State of Georgia. Plaintiff Serrano owns the premises known as and located at 358 Paper Woods Drive, Lawrenceville, Georgia 30046.  Plaintiff Serrano executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

108.    Plaintiff Edwin Kipu is an individual and a resident of the State of Hawaii. Plaintiff Kipu owns the premises known as and located at 11-3508 Plumeria Street, Mountain View, Hawaii 96771.  Plaintiff Kipu executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

109.    Plaintiff Jennifer Heying is an individual and a resident of the State of Iowa. Plaintiff Heying owns the premises known as and located at 2049 Woodland Drive, New Hampton, Iowa 50659.  Plaintiff Heying executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

110.    Plaintiff Treven Farrow is an individual and a resident of the State of Idaho. Plaintiff Farrow owns the premises known as and located at 5536 W. Keybridge Drive, Boise, Idaho 83703.  Plaintiff Farrow executed a promissory note to Bank of America, N.A., which is

secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

111.    Plaintiff Theresa Quinn is an individual and a resident of the State of Illinois. Plaintiff Quinn owns the premises known as and located at 9104 South Central Park, Evergreen Park, Illinois 60805.  Plaintiff Quinn executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

112.    Plaintiff Louise Brandon is an individual and a resident of the State of Illinois. Plaintiff Brandon owns the premises known as and located at 17130 Bernadine, Lansing, Illinois 60438.  Plaintiff Brandon executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

113.    Plaintiff Abraham Scott is an individual and a resident of the State of Illinois. Plaintiff Scott owns the premises known as and located at 2820 South Ashland Avenue, Beecher, Illinois 60401.  Plaintiff Scott executed a promissory note to JPMorgan Chase Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

114.    Plaintiff Jacquelyn Wildermoth is an individual and a resident of the State of Illinois.  Plaintiff Wildermoth owns the premises known as and located at 223 Valley Drive, Bolingbrook, Illinois 60440.  Plaintiff Wildermoth executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

26

115.    Plaintiff Juan Lozada is an individual and a resident of the State of Illinois. Plaintiff Lozada owns the premises known as and located at 405 East Crest Avenue, Bensenville, Illinois 60106.  Plaintiff Lozada executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

116.    Plaintiff Maximino Tenorio is an individual and a resident of the State of Indiana. Plaintiff Tenorio owns the premises known as and located at 1516 Hoffman Street, Hammond, Indiana 46327.  Plaintiff Tenorio executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

117.    Plaintiff Robert L. Phillips is an individual and a resident of the State of Indiana. Plaintiff Phillips owns the premises known as and located at 1042 Ames Street, Hammond, Indiana 46302.  Plaintiff Phillips executed a promissory note to BMO Harris Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendants Bank of America, N.A. and BMO Harris Bank, N.A.

118.    Plaintiff Dennis Artis is an individual and a resident of the State of Louisiana. Plaintiff Artis owns the premises known as and located at 13739 Brookview Avenue, Baton Rouge, Louisiana 70815.  Plaintiff Artis executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

119.    Plaintiff Rodney Migliore is an individual and a resident of the State of Louisiana. Plaintiff Migliore owns the premises known as and located at 84111 Magnolia Drive, Folsom, Louisiana 70437.  Plaintiff Migliore executed a promissory note to Bank of America, N.A.,

which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

120.    Plaintiff Paul Boucher is an individual and a resident of the State of Massachusetts.  Plaintiff Boucher owns the premises known as and located at 20 Washington Street 2-7, North Easton, Massachusetts 02356.  Plaintiff Boucher executed a promissory note to Seterus, Inc., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

121.    Plaintiff Lynn Yaichner is an individual and a resident of the State of Massachusetts.  Plaintiff Yaichner owns the premises known as and located at 28 Morgan Road, Hubbardston, Massachusetts 01452.  Plaintiff Yaichner executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

122.    Plaintiff Lori Asaro is an individual and a resident of the State of Massachusetts.  Plaintiff Asaro owns the premises known as and located at 2 Charles Street, Stoneham, Massachusetts 02180.  Plaintiff Asaro executed two promissory notes to Bank of America, N.A., which are secured by a primary and secondary mortgage against this premises.  Said mortgages are currently serviced by Defendant Bank of America, N.A.

123.    Plaintiff Lisa Robinson is an individual and a resident of the State of Massachusetts.  Plaintiff Robinson owns the premises known as and located at 28 Lincoln Street, Chicopee, Massachusetts 01020.  Plaintiff Robinson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A..

124.    Plaintiff Murielle Erasme is an individual and a resident of the State of Massachusetts.  Plaintiff Erasme owns the premises known as and located at 20 Nicholes Drive, Wareham, Massachusetts 02571.  Plaintiff Erasme executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

125.    Plaintiff Donnie Barnes is an individual and a resident of the State of Maryland.  Plaintiff Barnes owns the premises known as and located at 12708 Whiteholm Drive, Upper Marlboro, Maryland 20774.  Plaintiff Barnes executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

126.    Plaintiff Gerald Beamon is an individual and a resident of the State of Maryland.  Plaintiff Beamon owns the premises known as and located at 4204 Prudence Street, Baltimore, Maryland 21226.  Plaintiff Beamon executed a promissory note to Select Portfolio Servicing, Inc., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Select Portfolio Servicing, Inc.

127.    Plaintiff David Copeland is an individual and a resident of the State of Maryland.  Plaintiff Copeland owns the premises known as and located at 5636 Singletree Drive, Frederick, Maryland 21703.  Plaintiff Copeland executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

128.    Plaintiff Larry Hopson is an individual and a resident of the State of Maryland.  Plaintiff Hopson owns the premises known as and located at 101 Jarman Branch Drive, Centreville, Maryland 21617.  Plaintiff Hopson executed a promissory note to Seterus, Inc.,

which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

129.    Plaintiff Venson Smith is an individual and a resident of the State of Maryland. Plaintiff Smith owns the premises known as and located at 1403 Dunbar Oaks Drive, Capitol Heights, Maryland 20743.  Plaintiff Smith executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

130.    Plaintiff John Swayze is an individual and a resident of the State of Maryland. Plaintiff Swayze owns the premises known as and located at 10953 Bucknell Drive, Silver Springs, Maryland 20902.  Plaintiff Swayze executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A..

131.    Plaintiff Joseph Recco is an individual and a resident of the State of Maryland. Plaintiff Recco owns the premises known as and located at 10021 Kaylorite Street, Bunkirk, Maryland 20754.  Plaintiff Recco executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

132.    Plaintiff William Bennett is an individual and a resident of the State of Maryland. Plaintiff Bennett owns the premises known as and located at 27069 Crooked Oak Lane, Hedron, Maryland 21830.  Plaintiff Bennett executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

133.    Plaintiff Christin Damron is an individual and a resident of the State of Maryland. Plaintiff Damron owns the premises known as and located at 1013 Walnut Avenue, Baltimore, Maryland 21229.  Plaintiff Damron executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

134.    Plaintiff Jakay Davies is an individual and a resident of the State of Maryland. Plaintiff Davies owns the premises known as and located at 6204 Hilltop Avenue, Baltimore, Maryland 21206.  Plaintiff Davies executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

135.    Plaintiff Lilian Duran is an individual and a resident of the State of Maryland. Plaintiff Duran owns the premises known as and located at 2309 Drexel Street, Hyattsville, Maryland 20783.  Plaintiff Duran executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

136.    Plaintiff Karen Holloway is an individual and a resident of the State of Maryland. Plaintiff Holloway owns the premises known as and located at 471 Crisfield Drive, Abington, Maryland 21009.  Plaintiff Holloway executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

137.    Plaintiff Donald Mobley is an individual and a resident of the State of Maryland. Plaintiff Mobley owns the premises known as and located at 12615 Kingsfield Lane, Bowie, Maryland 20715.  Plaintiff Mobley executed a promissory note to Bank of America, N.A., which

is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

138.    Plaintiff Gary Roulette is an individual and a resident of the State of Maryland. Plaintiff Roulette owns the premises known as and located at 8869 Thomas Lea Terrace, Montgomery Village, Maryland 20886. Plaintiff Roulette executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

139.    Plaintiff Bradley Evans is an individual and a resident of the State of Maryland. Plaintiff Evans owns the premises known as and located at 1402 Benjamin Street, Baltimore, Maryland 21230. Plaintiff Evans executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

140.    Plaintiff Wayne Johnson is an individual and a resident of the State of Maryland. Plaintiff Johnson owns the premises known as and located at 7818 Solair Court, Pasedena, Maryland 21122. Plaintiff Johnson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

141.    Plaintiff Henrietta Deel is an individual and a resident of the State of Maryland. Plaintiff Deel owns the premises known as and located at 502 North Academy Street, Greensboro, Maryland 21639. Plaintiff Deel executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

142.    Plaintiff Ron McDaniels is an individual and a resident of the State of Michigan. Plaintiff McDaniels owns the premises known as and located at 2073 Center Street, Marquette, Michigan 49855.  Plaintiff McDaniels executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

143.    Plaintiff Mark Grzelak is an individual and a resident of the State of Michigan. Plaintiff Grzelak owns the premises known as and located at 10385 Michigan Avenue, Erie, Michigan 48113.  Plaintiff Grzelak executed two promissory notes to Flagstar Bancorp, Inc. d/b/a Flagstar Bank and Fifth Third Bank, which are respectively secured by a primary and secondary mortgage against this premises.  Said mortgages are currently serviced by Defendant Flagstar Bancorp, Inc. d/b/a Flagstar Bank.

144.    Plaintiff Raymond H. Frahm III is an individual and a resident of the State of Minnesota.  Plaintiff Frahm owns the premises known as and located at 24022 West Fawn Road NE, Stacy, Minnesota 55079.  Plaintiff Frahm executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

145.    Plaintiff Frederick Brooks is an individual and a resident of the State of Missouri. Plaintiff Brooks owns the premises known as and located at 13038 Spanish Pond Road, St. Louis, Missouri 63138.  Plaintiff Brooks executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

146.    Plaintiff Ouida McInnis is an individual and a resident of the State of Mississippi. Plaintiff McInnis owns the premises known as and located at 3512 Yucca Avenue, Moss Point,

Mississippi 39562.  Plaintiff McInnis executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

147.   Plaintiff John Jones is an individual and a resident of the State of New Jersey. Plaintiff Jones owns the premises known as and located at 171 Cannonball Drive, Tinton Falls, New Jersey 07753.  Plaintiff Jones executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

148.   Plaintiff Kenneth W. Abernathy is an individual and a resident of the State of New Jersey.  Plaintiff Abernathy owns the premises known as and located at 249 Broadway, Carneys Point, New Jersey 08069.  Plaintiff Abernathy executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

149.   Plaintiff Patricia Crammer is an individual and a resident of the State of New Jersey.  Plaintiff Crammer owns the premises known as and located at 3002 W. Bangs Avenue, Neptune, New Jersey 07753.  Plaintiff Crammer executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

150.   Plaintiff David Wynn is an individual and a resident of the State of New Jersey. Plaintiff Wynn owns the premises known as and located at 212 Clinton Avenue, Plainfield, New Jersey 07063.  Plaintiff Wynn executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

151.    Plaintiff Kenneth Dellett is an individual and a resident of the State of New Jersey.  Plaintiff Dellett owns the premises known as and located at 1416 Stanley Drive, Wall, New Jersey 07719.  Plaintiff Dellett executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

152.    Plaintiff Patrick D'Alessio is an individual and a resident of the State of New Jersey.  Plaintiff D'Alessio owns the premises known as and located at 100 Mt. Arlington Blvd., Landing, New Jersey 07850.  Plaintiff D'Alessio executed a promissory note to IndyMac Bank, FSB, n/k/a OneWest Bank, FSB, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

153.    Plaintiff William Donohoe is an individual and a resident of the State of New Jersey.  Plaintiff Donohoe owns the premises known as and located at 1128 Florence Avenue, Union Beach, New Jersey 07735.  Plaintiff Donohoe executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

154.    Plaintiff Angelica Santana is an individual and a resident of the State of New Jersey.  Plaintiff Santana owns the premises known as and located at 12 Willow Street, Bergenfield, New Jersey 07621.  Plaintiff Santana executed a promissory note to PNC Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant PNC Mortgage, a Division of PNC Bank, N.A.

155.    Plaintiff Anthony Smith is an individual and a resident of the State of New Jersey.  Plaintiff Smith owns the premises known as and located at 101 Becker Avenue, Rochelle Park, New Jersey 07662.  Plaintiff Smith executed a promissory note to Bank of America, N.A., which

is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

156.    Plaintiff Robert Klages is an individual and a resident of the State of New Jersey. Plaintiff Klages owns the premises known as and located at 348 Gulden Street, Keyport, New Jersey 07735.  Plaintiff Klages executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

157.    Plaintiff Diana Rodriguez is an individual and a resident of the State of New Jersey and Pennsylvania.  Plaintiff Rodriguez owns the premises known as and located at 131 W. Washington Avenue, Washington, New Jersey 07882, 114 Summit Avenue, Phillipsburg, New Jersey 08865, and 1216 Chidsey Street, Easton, Pennylvania 18042.   Plaintiff Rodriguez executed promissory notes to Bank of America, N.A., which are secured by mortgages against these premises.  Said mortgages are currently serviced by Defendant Bank of America, N.A.

158.    Plaintiff Dawn Sadler is an individual and a resident of the State of New Jersey. Plaintiff Sadler owns the premises known as and located at 18 Irving Street, East Orange, New Jersey 07108.  Plaintiff Sadler executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

159.    Plaintiff Branda Hall is an individual and a resident of the State of New Jersey. Plaintiff Hall owns the premises known as and located at 85 Genesee Avenue, Teaneck, New Jersey 07666.  Plaintiff Hall executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A..

160.    Plaintiff Isabela Solis is an individual and a resident of the State of New Mexico. Plaintiff Solis owns the premises known as and located at 4628 April Place, Las Cruces, New Mexico 88007.  Plaintiff Soilis executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

161.    Plaintiff Carol Thompson is an individual and a resident of the State of New Mexico.  Plaintiff Thompson owns the premises known as and located at 11028 Maravillas Drive, N.W., Albuquerque, New Mexico 87114.  Plaintiff Thompson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

162.    Plaintiff Mary Beth Petrosh is an individual and a resident of the State of Ohio. Plaintiff Petrosh owns the premises known as and located at 2105 Raceway Trail, Beaver Creek, Ohio 45434.  Plaintiff Petrosh executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A..

163.    Plaintiff Christian Ford is an individual and a resident of the State of Ohio. Plaintiff Ford owns the premises known as and located at 28208 Center Ridge Road, Westlake, Ohio 44145.  Plaintiff Ford executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

164.    Plaintiff Anthony San Nicolas is an individual and a resident of the State of Oregon.  Plaintiff San Nicolas owns the premises known as and located at 33490 Santiam Highway, Lebanon, Oregon 97355.  Plaintiff San Nicolas executed a promissory note to Bank of

America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

165.    Plaintiff Anthony K. Jones is an individual and a resident of the State of Pennsylvania.  Plaintiff Jones owns the premises known as and located at 730 Flexer Avenue, Allentown, Pennsylvania 18103.  Plaintiff Jones executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

166.    Plaintiff Robert Coulter, Jr. is an individual and a resident of the State of Pennsylvania.  Plaintiff Coulter owns the premises known as and located at 365 Mauch Chunk Street, Nazarath, Pennsylvania 18064.  Plaintiff Coulter executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

167.    Plaintiff Ramon Gomez is an individual and a resident of the State of Pennsylvania.  Plaintiff Gomez owns the premises known as and located at 27 West Union Boulevard, Bethlehem, Pennsylvania 18018.  Plaintiff Gomez executed a promissory note to Green Tree Servicing, LLC, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

168.    Plaintiff Robert Kistler is an individual and a resident of the State of Pennsylvania.  Plaintiff Kistler owns the premises known as and located at 64 Petri Lane, Irwin, Pennsylvania 15642.  Plaintiff Kistler executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

169.    Plaintiff William Lacomchek is an individual and a resident of the State of Pennsylvania.  Plaintiff Lacomchek owns the premises known as and located at 2211 North 51st Street, Philadephia, Pennsylvania 19131.  Plaintiff Lacomchek executed a promissory note to PNC Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant PNC Mortgage, a Division of PNC Bank, N.A.

170.    Plaintiff Robert Quinn is an individual and a resident of the State of Pennsylvania.  Plaintiff Quinn owns the premises known as and located at 3217 Wellington Street, Philadelphia, Pennsylvania 19149.  Plaintiff Quinn executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

171.    Plaintiff Marie McAfee is an individual and a resident of the State of Pennsylvania.  Plaintiff McAfee owns the premises known as and located at 505 E. Ridley Avenue, Ridley Park, Pennsylvania 19078.  Plaintiff McAfee executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

172.    Plaintiff James T. Hillian is an individual and a resident of the State of South Carolina.  Plaintiff Hillian owns the premises known as and located at 1128 Blakely Court, West Columbia, South Carolina 29170.  Plaintiff Hillian executed promissory notes to Select Portfolio Servicing, Inc. and Bank of America, N.A., which are respectively secured by a primary and secondary mortgage against this premises.  Said mortgages are currently and respectively serviced by Defendants Select Portfolio Servicing, Inc. and Bank of America, N.A..

173.    Plaintiff Brody Bohn is an individual and a resident of the State of Texas.  Plaintiff Bohn owns the premises known as and located at 1404 Shady Hollow Court, Keller,

Texas 76248.  Plaintiff Bohn executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant PNC Mortgage, a Division of PNC Bank, N.A.

174.    Plaintiff Arthur Gipson is an individual and a resident of the State of Texas. Plaintiff Gipson owns the premises known as and located at 1333 Kentucky Avenue, Lancaster, Texas 75134.  Plaintiff Gipson executed two promissory notes to Select Portfolio Servicing, Inc., which are secured by mortgages against this premises.  Said mortgages are currently serviced by Defendant Select Portfolio Servicing, Inc.

175.    Plaintiff Rodger Gulley is an individual and a resident of the State of Texas. Plaintiff Gulley owns the premises known as and located at 1085 East Alamosa Drive, Terrell, Texas 71560.  Plaintiff Gulley executed a promissory note to First Franklin Bank, n/k/a PNC Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Select Portfolio Servicing, Inc.

176.    Plaintiff Mike Leffew is an individual and a resident of the State of Texas. Plaintiff Leffew owns the premises known as and located at 122 Briar Forest Drive, Bastrop, Texas 78602.  Plaintiff Leffew executed a promissory note to Select Portfolio Servicing, Inc., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendants Bank of America, N.A. and Select Portfolio Servicing, Inc.

177.    Plaintiff Maria Munoz is an individual and a resident of the State of Texas. Plaintiff Munoz owns the premises known as and located at 4817 Honeysuckle Drive, Balch Springs, Texas 75180.  Plaintiff Munoz executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

178.    Plaintiff Charlotte Fall is an individual and a resident of the State of Texas. Plaintiff Fall owns the premises known as and located at 14815 Avery Ranch Boulevard 1302, Austin, Texas 78717.  Plaintiff Fall executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

179.    Plaintiff Glen Walling is an individual and a resident of the State of Utah. Plaintiff Walling owns the premises known as and located at 261 W. 490 North Circle, La Verkin, Utah 84745.  Plaintiff Walling executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

180.    Plaintiff Anna Duarte is an individual and a resident of the State of Virginia. Plaintiff Duarte owns the premises known as and located at 12543 Plymouth Court, Woodbridge, Virginia 22192.  Plaintiff Duarte executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

181.    Plaintiff Christine Chavarria is an individual and a resident of the State of Virginia.  Plaintiff Chavarria owns the premises known as and located at 602 Harrogate Road, Fredericksburg, Virginia 22406.  Plaintiff Chavarria executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

182.    Plaintiff Gene Major is an individual and a resident of the State of Virginia. Plaintiff Major owns the premises known as and located at 15019 Cardin Place, Dale City, Virginia 22193.  Plaintiff Major executed a promissory note to Bank of America, N.A., which is

secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

183.    Plaintiff Donald Slayton is an individual and a resident of the State of Virginia. Plaintiff Slayton owns the premises known as and located at 518 Cardinal Drive, Winchester, Virginia 22602.  Plaintiff Slayton executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

184.    Plaintiff Kelly Way is an individual and a resident of the State of Virginia. Plaintiff Way owns the premises known as and located at 2204 Elijah Street, Chesapeake, Virginia 23323.  Plaintiff Way executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

185.    Plaintiff Nuray Karatas is an individual and a resident of the State of Virginia. Plaintiff Karatas owns the premises known as and located at 7760 Trevino Lane, Falls Church, Virginia 22043.  Plaintiff Karatas executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

186.    Plaintiff Jan Miller is an individual and a resident of the State of Virginia. Plaintiff Miller owns the premises known as and located at 10111 Broadsword Drive, Bristow, Virginia 20136.  Plaintiff Miller executed a promissory note to Bank of America, N.A, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

187.     Plaintiff Darius Robinson is an individual and a resident of the State of Virginia. Plaintiff Robinson owns the premises known as and located at 240 Tyson Road, Bracey, Virginia 23919.   Plaintiff Robinson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

188.     Plaintiff Stephanie Woodson is an individual and a resident of the State of Virgina.  Plaintiff Woodson owns the premises known as and located at 190 Wayburn Street, Churchville, Virginia 24421.   Plaintiff Woodson executed a promissory note to Flagstar Bancorp, Inc. d/b/a Flagstar Bank, which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Flagstar Bancorp, Inc. d/b/a Flagstar Bank.

189.     Plaintiff Jae Ames is an individual and a resident of the State of Washington. Plaintiff Ames owns the premises known as and located at 139 Doty Dryad Road, Chehalis, Washington 98532.  Plaintiff Ames executed a promissory note to PNC Bank, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant PNC Mortgage, a Division of PNC Bank, N.A.

190.     Plaintiff Martin E. Rooney is an individual and a resident of the State of Washington.  Plaintiff Rooney owns the premises known as and located at 11707 40th Avenue NW, Gig Harbor, Washington 98332.  Plaintiff Rooney executed a promissory note to Select Portfolio Servicing, Inc., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Select Portfolio Servicing, Inc.

191.     Plaintiff Tasha Shipman is an individual and a resident of the State of Washington.  Plaintiff Shipman owns the premises known as and located at 5120 S. Sheridan Avenue, Tacoma, Washington 98408.  Plaintiff Shipman executed a promissory note to Bank of

America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

192. Plaintiff Bernadette Chapman is an individual and a resident of the State of Washington. Plaintiff Chapman owns the premises known as and located at 1515 Center Street, Taxoma, Washington 98409. Plaintiff Chapman executed a promissory note to Bayview Loan Servicing, LLC, which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A..

193. Plaintiff Mikki Keller is an individual and a resident of the State of Washington. Plaintiff Keller owns the premises known as and located at 2129 N.E. Garfield Street, Camas, Washington 98607. Plaintiff Keller executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

194. Plaintiff John Miller is an individual and a resident of the State of Washington. Plaintiff Miller owns the premises known as and located at 14115 80th Street East, Tuyallup, Washington 98372. Plaintiff Miller executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

195. Plaintiff Roger Carter is an individual and a resident of the State of West Virginia. Plaintiff Carter owns the premises known as and located at 118 Grenich Avenue, Bunker Hill, West Virginia 25413. Plaintiff Carter executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

196.    Plaintiff Tami C. Hammond is an individual and a resident of the State of Wisconsin.  Plaintiff Hammond owns the premises known as and located at 480 Walnut Street, Oregon, Wisconsin 53575.  Plaintiff Hammond executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

197.    Plaintiff Lorin Chojnacki is an individual and a resident of the State of Wisconsin.  Plaintiff Chojnacki owns the premises known as and located at 8154 Standing Rocks Road, Amherst, Wisconsin 54406.  Plaintiff Chojnacki executed a promissory note to Bank of America, N.A., which is secured by a mortgage against this premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

198.    Plaintiffs' counsel is aware of and has provided services to unnamed ROE Plaintiffs, each of whom sustained actual injury.  The unnamed ROES sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint.  From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining ROE Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional ROE Plaintiffs, or will follow such other process as is proscribed by the Court.

199.    An additional large number of persons have contacted Counsel or their staffs pertaining to the matters complained of herein.  In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion to add such parties to this action.

200. In the event Plaintiffs file a separate lawsuit appertaining to all or any of these unnamed persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases, or as otherwise directed by the Court.

201. Defendant Bank of America, N.A. is a national banking association organized under the laws of the United States. Defendant Bank of America, N.A. is located at 100 North Tryon Street, Charlotte, North Carolina 28202.

202. Defendant PNC Bank, N.A. is a national banking association organized under the laws of the United States. Defendant PNC Bank, N.A. is located at 249 5th Avenue, Suite 30, Pittsburgh, Pennsylvania 15222.

203. Defendant Select Portfolio Servicing, Inc. is a domestic corporation incorporated under the laws of Florida. Defendant Select Portfolio Servicing, Inc. is located at 3815 S. West Temple, Salt Lake City, Utah 84115.

204. Defendant JPMorgan Chase Bank, N.A. is a national banking association organized under the laws of the United States. Defendant JPMorgan Chase Bank, N.A. is located at 270 Park Avenue, New York, New York 10017.

205. Defendant Green Tree Servicing, LLC is a domestic limited liability company organized under the laws of Florida. Defendant Green Tree Servicing, LLC is located at 345 Saint Peter Street, Saint Paul, Minnesota 55102.

206. Defendant Flagstar Bancorp, Inc. is a domestic corporation incorporated under the laws of Michigan. Defendant Flagstar Bancorp, Inc. is located at 5151 Corporate Drive, Troy, Michigan 48098.

207.    Defendant BMO Harris Bank, N.A. is a national banking association organized under the laws of the United States.  Defendant BMO Harris Bank, N.A. is located at 111 West Monroe Street, Chicago, Illinois, 60603.

208.    Defendant Seterus, Inc. is a domestic corporation incorporated under the laws of Florida.  Defendant Seterus, Inc. is located at 8501 IBM Drive, Building 201, Charlotte, North Carolina 28262.

209.    Defendant Fifth Third Bank is a domestic banking company organized under the laws of Ohio.  Defendant Fifth Third Bank is located at 38 Fountain Square Plaza, Cincinnati, Ohio 45263.

210.    Defendant OneWest Bank, FSB is a federal saving bank organized under the laws of the United States.  Defendant OneWest Bank, FSB is located at 888 East Walnut Street, Pasadena, CA 91101.

211.    Defendant Bayview Loan Servicing, LLC is a domestic limited liability company organized under the laws of Florida.  Defendant Bayview Loan Servicing, LLC is located at 4425 Ponce de Leon Boulevard, Coral Gables, Florida 33146.

## COUNT I

### Breach of Contract

212.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

213.    Plaintiffs held individual mortgages that were serviced by Defendants, and after suffering financial problems and the eventual default of the terms of Plaintiffs' promissory notes, Plaintiffs requested loan modifications from Defendants.

214.    Defendants offered each of the Plaintiffs a modification pursuant to the completion of terms under a trial modification.  Plaintiffs each and every one of them, accepted the modification offer.

215.    Plaintiffs either met the conditions precedent by complying with all terms of the trial, beginning with providing all documentation as part of the modification application package or were unable to because of Defendants' substantial interference.

216.    Defendants would often send multiple requests that Plaintiffs submit additional documents to Defendants, claiming documents were missing or not submitted, after Plaintiffs already provided the documents in question.  Defendants even provided conflicting information to individual Plaintiffs regarding what was allegedly received.

217.    These repetitive, unduly complicated, and burdensome requests occurred to interfere with Plaintiffs' loan modification application.   Plaintiffs again complied with Defendants' requests or attempted as best as possible in spite of Defendant's efforts to impede Plaintiff's compliance with their requirements under the modification agreement.

218.    Defendants often would not provide trial modification terms to Plaintiffs, for their alleged shortcomings in the modification process, which could only be explained by either the inconsistent and conflicting status updates given to Plaintiffs that Defendants used to their benefit, or a failure of Defendants' loss mitigation representatives to adequately conduct document intake.

219.    When Plaintiffs were able to satisfy certain conditions according to Defendants, Plaintiffs were given trial modification payment terms.  Defendants also indicated that the furnishing of the necessary trial payments constituted an additional condition precedent pursuant to the modification agreement, which if met would provide for a permanent modification.

220.    Plaintiffs made the monthly trial payments pursuant to the loan modification agreement offered by Defendants.

221.    Following Plaintiff's completion of all conditions precedent, Defendants refused to comply with the loan modification agreement and give a permanent modification as contracted upon.

222.    Defendants had an obligation to modify Plaintiffs' loans but breached the terms of their loan modification agreement with Plaintiffs and other similarly situated homeowners. Defendants systematically deprived Plaintiffs and other homeowners the benefits of the loan modifications while benefiting from their insurance-like contracts.  These removed the incentive to work with Plaintiffs to obtain modifications by, *inter alia*, giving repeating and onerous documentation demands, delaying processing of documentation of documents, failing to allocate sufficient resources and to train competent and knowledgeable staff in order to ensure accurate and timely processing of loan modifications, and other failures described herein.

223.    Upon information and belief, Defendants often make their repetitive requests claiming Plaintiffs did not submit certain documents as part of the modification package to fraudulently create justification for not giving the Plaintiffs their permanent modification.

224.    Defendants have denied or failed to provide Plaintiffs a loan modification and instead, has generated profit for itself by continuing to charge excessive late and default fees and interest.

225.    As a direct and proximate result of Defendants' breach of their loan modification agreements, Plaintiffs did not receive the benefit of the bargain, suffered damages and are threatened with additional harm, in an amount to be determined at trial.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

226.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

227.    Every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract, which requires that neither party do anything to infringe on the other party's rights to the benefits of the agreements or to deprive the other party of the benefits of the contract.

228.    Defendants breached the implied covenant of good faith and fair dealing contained in their loan modification agreements.

229.    Defendants further breached the implied covenant of good faith and fair dealing by, *inter alia*,

   A.  failing to make a good faith effort to fulfill Defendants' contractual obligations, written and implied promises, and loan servicing functions;

   B.  demanding the same documents be sent on multiple occasions, delaying processing of documents, and failing to allocate sufficient resources and to train competent and knowledgeable staff in order to ensure accurate and timely processing of loan modification requests; and

   C.  demanding late fees, interest and other delinquency related fees from Plaintiff in excess of what they could reasonably pay.

230.    As a direct result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs suffered damages in an amount to be determined at trial.

**COUNT III**

**Promissory Estoppel**

231.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

232.    Defendants represented that Plaintiffs were approved for loan modifications, and that Plaintiffs could make modified, reduced payments that would satisfy existing loan obligations for the terms set forth in the loan modification agreements.

233.    Defendants intentionally induced Plaintiffs to rely on its representations concerning its loan modification programs and to begin making the modified payments

234.    Plaintiffs' reliance was reasonable in light of Defendants' representations regarding its loan modification program.

235.    Plaintiffs and other similarly situated homeowners relied on the representations of Defendants to their detriment.

**COUNT IV**

**Fraudulent Concealment**

236.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

237.    Defendants used fraud and artifice to lure Plaintiffs into defaulting on their mortgages by promising future opportunities for loan modifications when they had no intention of providing such permanent modifications.

238.    Once Defendants guided Plaintiffs into default, Defendants were able to collect upon their credit default swaps, which allow Defendants to collect on every loan that goes bad by entering into default.

239.     As a result of these practices, Defendants failed to provide permanent modifications for the entitled Plaintiffs and encouraged default on their loans.  By hedging against each of the Plaintiffs by conducting credit default swaps on every loan serviced, Defendants were able to collect on these side bets.

240.     Defendants' ulterior motives to see Plaintiffs remain in default on their mortgages rather than offer a modification, after conveying to Plaintiffs that one would be given, had been hidden from the Plaintiffs by Defendants.

241.     These suppressed facts and circumstances described herein should have been disclosed to the Plaintiffs by the Defendants.  Such details were material because they were essential to Plaintiff's analysis that would have been undertaken in determining whether to enter into a loan transaction with the Defendants.  Had Plaintiff known this information, Plaintiffs would have acted differently than without having this vital information concealed by Defendants.

242.     These concealed facts and circumstances were known to Defendants at the time they were hidden from Plaintiffs.

243.     Defendants were aware at the time of the suppression of information that this concealment would induce Plaintiffs to act in a way that was injurious, while at the same time being profitable and advantageous to Defendants.

244.     By concealing this information, Defendants intended to induce Plaintiffs to alter their positions to their harm.

245.     Plaintiffs justifiably and reasonably relied on the fraudulent concealment created by Defendants' suppression of information.

246.     Defendants' gain of profits from the credit default swaps combined with their receipt of money from Plaintiffs in the form of trial modification payments represents a windfall gained by the Defendants.

247.     Defendants knowingly and willingly committed this wrongdoing against the Plaintiffs as described herein and knowingly chose to deceive them. These acts were malicious, and performed with a wanton disregard for Plaintiffs' legal rights. Plaintiffs are therefore entitled to punitive damages.

## COUNT V

### Fraud for Demanding and Collecting Monthly
### Note Payments under False Pretenses

248.     The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

249.     Upon information and belief, starting as early as the formation and securitization of the notes, and up to and including the last date of payments by the Plaintiffs, Defendants and its agents, servicers, predecessors, and successors-in-interest made false representations of material fact by demanding, and thereafter collecting payments on the notes from the Plaintiffs.

250.     This is an action against Defendants, including the successors-in-interest to Plaintiffs' original lenders, as to whether they are the owner and in possession of promissory notes executed by the Defendants, where notes were assigned by its payee, directly or indirectly, to one or more underwriters and Real Estate Mortgage Investment Conduit (REMIC) trustees and servicers for securitization. A REMIC is an entity that holds a fixed pool of mortgages and issues multiple classes of interests in itself to investors, which allows for the issuance of mortgage-backed securities pursuant to 26 USC § 860D.

251.    Due to this securitization process, including the possibility of unrelated assignments of, borrowing against, and pledging of the notes by Wall Street financial institutions, it is not clear to the Plaintiffs who are the owners of their notes.

252.    Various purported assignments of Plaintiffs' notes allegedly occurred among Defendants and others in the securitization of the loan, including an assignment of the notes from its original payee to one or more depositors (i.e., note bundlers for resale), underwriters, syndicate managers, and then to a REMIC trustee, and possibly one or more loan servicers, special servicers or master servicers.

253.    Also, upon information and belief, the notes were assigned to one or more financial institutions, lenders or others as security or payment in one or more transactions that had nothing to do with the Plaintiffs.

254.    Upon information and belief, each of the note assignments was governed by an underwriting agreement and a pooling and servicing agreement which is governed by and to be construed under New York law, and Internal Revenue Code rules relating to REMIC rules (prohibiting assignments of notes to or from the trust except under limited circumstances and date ranges).

255.    The documentary evidence and witnesses needed by the Plaintiffs to determine the ownership of their individual notes are maintained by Defendants, including the underwriting agreement, the pooling and servicing agreement, the various transactions pursuant to which the notes was securitized, all transactions involving the notes with the REMIC trustee, any of the servicers; and witnesses to the various stages of securitization and assignments of the notes by the underwriters, REMIC trustee, and servicers.

256.    Each time Defendants or its agent, servicer, predecessor, or successor-in-interest sent its monthly statement to the Plaintiffs, it has represented, impliedly or literally, that it has the right to demand and collect such monthly payments on their notes.

257.    Upon information and belief, each such representation was a false representation of material fact.

258.    These representations of material fact were made knowingly and for the purpose of inducing the Plaintiffs to make the monthly note payments to Defendants.

259.    Defendants and its agents acted with scienter, and intended that the Plaintiffs rely on the misrepresentations.

260.    Defendants and its agents knew the representations to be false at the time they were made to the Plaintiffs.

261.    Plaintiffs reasonably relied on these false representations made by Defendants and its agents to their detriment when making payments on the notes believing the payments were being made to or for the benefit of the owner of the notes.  This occurred between their formation dates and when Plaintiffs ceased making payments.  At that time, Plaintiffs realized from securitization publicity that Defendants and its agents probably are not in the chain of title for, and do not own, their notes.

262.    Defendants and its agents collected payments resulting from the Plaintiffs' reasonable reliance despite knowing that they were not, and are not, and were not representing, the rightful owner in possession of the notes, and thus, were not, and are not, in fact entitled to collect such payments from the Plaintiffs.

263.    The payments to be made by the Plaintiffs were demanded by Defendants and its agents under false pretense.

55

264.     The Plaintiffs have been injured by their reasonable reliance because they made payments on the notes to Defendants, and its agents, which are not the owner in possession of the notes, and do not represent the owner or possessor of such, and as a result, are not in fact entitled to collect payment for such notes.

265.     In light of these actions by Defendants and its agents, the Plaintiffs are entitled to a refund of all payments made by them to Defendants and its agents after securitization of the notes, an amount to be determined by the Court, plus pre-judgment interest.

## COUNT VI

## Violations of State Consumer Protection Statutes

266.     The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

267.     Plaintiffs are "consumers" as defined in their respective state consumer protection statutes.

268.     The activities of Defendants as alleged in the preceding causes of action constitute deceptive acts and practices in the conduct of Defendants' business and furnishing of services.

269.     The Defendants committed loan modification fraud by misrepresenting a material fact to Plaintiffs by failing to state that their mortgages would be assigned or insured and bundled in such a way that there would be no bank having an interest in working with the Plaintiffs in the event they needed a forbearance or modification agreement despite Plaintiffs' qualifications. This is one of the primary obligations of the lending bank under law and industry-wide custom and usage, and part of Defendants' implied covenant of good faith and fair dealing with the Plaintiffs.

270.    In addition to maintaining a fraudulent modification program, Defendants repeatedly acted in a predatory fashion when offering certain loans to Plaintiffs.  Defendants hid the true costs of credit for the mortgages by failing to deliver the Federally-required disclosures to Plaintiffs and misrepresenting numerous other critical and material aspects of financing transactions.  In particular:

A.    Defendants misrepresented that certain Plaintiffs could afford the monthly payments on an adjustable-rate loan, when the payments would drastically increase beyond Plaintiffs' means absent some unforeseeable drastic increase in their income, or provided incorrect information to Plaintiffs regarding the fixed interest rate loan terms.

B.    Required insufficient financial documentation, or disregarded critical aspects of Plaintiffs' loan applications, to adequately determine a borrower's income and financial capability to make all payments through the life of a loan, when approving Plaintiffs for a mortgage.

C.    Tolerated exaggerated incomes of certain Plaintiffs because Defendants' underwriting guidelines permitted it to lend more money, allowing Defendants to garner more interest than would otherwise have been possible.

D.    Failed to disclose escrow charges for taxes and insurance from Plaintiffs' disclosed monthly mortgage payment to make the payment seem more affordable.

E.    Offered mortgage loans that Plaintiffs could not afford to service, but were nonetheless made, because Defendants adequately collateralized such loans, which amounts to improper asset-based lending.

F.  Falsely made assurances regarding not only the stability of the housing market, but grossly exaggerated expected growth in housing prices.  This was done to induce Plaintiffs to accept loan terms because it was encouraged that there would always be an option to sell their homes at a profit, or else refinance it with more favorable terms.

G.  Failed to disclose how a negative-amortization loan works, in particular how the unpaid interest is added to the principal amount, causing it to drastically increase.

H.  Failed to adequately disclose how an adjustable rate loan operates in that it has monthly payments that continue to rise over the life of the loan.

271.  The activities as alleged are directed to hundreds of thousands of consumer-homeowners who have financed their homes through notes that have been securitized.

272.  Defendants' acts and misrepresentations constitute acts, uses, or employment by Defendants and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment.

273.  The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and consumers at large.

274.  Plaintiffs relied to their detriment on the deceptive acts and practices, and have no adequate remedy of law.

275.  Plaintiffs assert claims for violations of their respective specific state consumer protection laws against Defendants, its successors-in-interest, agents, servants, employees, or

others with whom they acted in concert, have acted in some control or capacity over the origination, processing, and/or servicing of the Plaintiffs' loans.

276.    Plaintiff Hogerty asserts claims under Alabama Code Title 8 §§ 8-19-5 and 8-19-10.

277.    Plaintiff Allensworth asserts claims under Arkansas Statutes §§ 4-88-107 and 4-88-113.

278.    Plaintiffs L.K. Adams, J. Adams, Graham, Rubino, Vandale, Scinto, Phillips, and Villemaire assert claims under General Statutes of Connecticut §§ 42-110b and 42-110g.

279.    Plaintiffs Ross, Cale, Swanston, Peters, Rahsman, and Mitchell assert claims under Delaware Code Title 6 §§ 2532 and 2533.

280.    Plaintiffs Evans, T. Hall, L. Hall, Schauer, Sheaf, Shearer, R. Schwarby, Nyce, and K. Schwarby assert claims under Florida Statutes §§ 501.204 and 501.211.

281.    Plaintiffs Herron, Ike, Kraushaar, and Serrano assert claims under Georgia Code §§ 10-1-393 and 10-1-399.

282.    Plaintiff Kipu asserts claims under Hawaii Revised Statutes §§ 480-2 and 480-13.

283.    Plaintiff Heying asserts claims under Iowa Code §§ 714.16(2) and 714.16(7).

284.    Plaintiff Farrow asserts claims under Idaho Statutes §§ 48-603, and 48-608.

285.    Plaintiffs Quinn, Brandon, Scott, Wildermoth, and Lozada assert claims under Illinois Compiled Statutes §§ 815 ILCS 505/2 and 815 ILCS 505/10a.

286.    Plaintiffs Tenorio and Phillips assert claims under Indiana Code §§ 24-5-0.5-3 and 24-5-0.5-4.

287.    Plaintiffs Artis and Migliore assert claims under Louisiana Revised Statutes §§ 51:1405 and 51:1409.

288.     Plaintiffs Barnes, Beamon, Copeland, Hopson, Smith, Swayze, Recco, Bennett, Damron, Davies, Duran, Holloway, Mobley, Roulette, Evans, Johnson, and Deel assert claims under Maryland Statutes §§ 13-301 and 13-408.

289.     Plaintiffs Boucher, Yaichner, Asaro, Robinson, and Erasme assert claims under General Laws of Massachusetts Chap. 93A §§ 2 and 9.

290.     Plaintiffs McDaniels and Grzelak assert claims under Michigan Compiled Laws §§ 445.903 and 445.911.

291.     Plaintiff Frahm asserts claims under Minnesota Statutes §§ 325D.44 and 325D.45.

292.     Plaintiff McInnis asserts claims under Mississippi Code Ann. §§ 75-24-5 and 75-24-23.

293.     Plaintiff Brooks asserts claims under Missouri Revised Statutes §§ 407.020 and 407.025.

294.     Plaintiffs Jones, Abernathy, Crammer, Wynn, Dellett, D'Alessio, Donohoe, Santana, Smith, Klages, Rodriguez, Sadler, and Hall assert claims under New Jersey Statutes §§ 56:8-2, 56:8-2.11, 56:8-2.12, and 56:8-2.13.

295.     Plaintiffs Solis and Thompson assert claims under New Mexico Statutes §§ 57-12-2, 57-12-3, and 57-12-10.

296.     Plaintiff Martin, Burnett-Gareave, Celestain, Cortazar, Demaj, Harris, Lottihall, Luzier, McCoy, and Vavala asserts claims under New York General Business Law § 349.

297.     Plaintiffs Petrosh and Ford assert claims under Ohio Revised Code §§ 1345.02 and 1345.09.

298.     Plaintiff San Nicolas asserts claims under Oregon Revised Statutes §§ 646.608 and 646.638.

299.    Plaintiffs Jones, Coulter, Gomez, Kistler, Lacomchek, Quinn, Rodriguez, and McAfee assert claims under Pennsylvania Statutes 73 P.S. §§ 201-2, 201-3, and 201-9.2.

300.    Plaintiff Hillian asserts claims under South Carolina Code of Laws §§ 39-5-20 and 39-5-140.

301.    Plaintiffs Bohn, Gipson, Gulley, Leffew, Munoz, and Fall assert claims under Texas Statutes §§ 17.46 and 17.50.

302.    Plaintiff Walling asserts claims under Utah Code §§ 13-11-4 and 13-11-19.

303.    Plaintiffs Duarte Chavarria, Major, Slayton, Way, Karatas, Miller, Robinson, and Woodson assert claims under Code of Virginia §§ 59.1-200 and 59.1-204.

304.    Plaintiffs Ames, Rooney, Shipman, Chapman, Keller, and Miller assert claims under Revised Code of Washington §§ 19.86.020 and 19.86.090.

305.    Plaintiff Carter asserts claims under West Virginia Code §§ 46A-6-102, et seq., and 46A-6-106.

306.    Plaintiffs Hammond and Chojnacki assert claims under Wisconsin Statutes §§ 100.18(1) and 100.18(11)(b)(2).

307.    Under the afore-mentioned state statutes, the Plaintiffs are entitled to and request a preliminary and permanent injunction against Defendants to order it to stop these unlawful practices, and for an award of actual damages caused to the Plaintiffs, an amount to be determined by the Court, and the statutory relief provided by said laws upon a finding that Defendants acted willfully and knowingly to violate these provisions of law.  Also, Plaintiffs are entitled to an award of attorney's fees and any other and further relief as this Court deems just and proper.

## COUNT VII

## <u>Violations of the Federal Truth in Lending Act</u>

308.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

309.    At the time of each of the transactions between the Defendants and individual Plaintiffs, Defendant lenders, and their successors-in-interest, acted as a creditor who regularly engaged in the making of mortgage loans, payable by agreement in more than four installments or for which the payment of a finance charge is or may be required whether in connection with loans, sales of property or services, or otherwise.  Accordingly, Defendants are subject to the Federal Truth-In-Lending Act (hereinafter "TILA"), 15 USC §§ 1601 et seq., and its implementing regulations, Federal Reserve Board Regulation Z (hereinafter "Regulation Z"), 12 CFR § 226.

310.    As a result of the subject transactions, Defendants acquired an interest in Plaintiffs' homes that secures payment or performance of an obligation.

311.    Upon information and belief, in the course of the subject consumer credit transactions described above, Defendants violated the disclosure requirements of TILA and Regulation Z regarding the mortgages given by Plaintiffs, by failing to disclose to Plaintiff material terms at the time of and leading up to closing of titles.

312.    Defendants failed to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. §§ 226.18(b) & 226.4.

313.    Defendants failed to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4;

314. Defendants failed to disclose properly and accurately the "annual percentage rate" in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

315. Defendants failed to disclose properly and accurately the variable rate in violation of 15 U.S.C. § 1638(a)(14) and 12 C.F.R. § 226.18(f).

316. Defendants failed to disclose properly and accurately the "total of payments" in violation of 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(h).

317. Defendants failed to disclose properly and accurately the number, amount, and due dates or period or payments scheduled to repay the obligation in violation of U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g).

318. Defendants failed to disclose that a security interest was taken in the subject properties in violation of U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.18(m).

319. As a direct and proximate result of Defendants' failure to disclose, Plaintiffs entered into mortgage agreements with binding terms to their detriment, which would not have been agreed upon but for the TILA violations committed by Defendants.

## COUNT VIII

### Unjust Enrichment

320. The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

321. Through their conduct described herein, Defendants were unjustly enriched at the expense of each of the Plaintiffs by taking their money under false pretenses in the form of trial modification payments.

322. While the trial payments may at times have technically been credited against the remaining principal of Plaintiffs' loans, Defendants led the Plaintiffs to believe making the trial

modification payments was a necessary step, and if completed meant Defendants would provide a permanent modification.  However, because of Defendants' dual-track process and flagrant shortcomings in their modification processing protocols, Plaintiffs' permanent modifications were destined to be rejected despite their compliance with the modification agreement.

323.    Defendants encouraged the furnishing of trial payments and were more than willing to accept the modification payments, yet were already anticipating breaching the permanent modification agreement for above-mentioned reasons.

324.    Defendants were merely trying to strip as much equity as possible from the Plaintiffs before trying to take their homes through an eventual foreclosure, despite Plaintiffs' completion of requirements pursuant to a modification contract.

325.    Plaintiffs would not have made these trial payments had they known Defendants was internally guiding them towards foreclosure, regardless of terms earlier agreed upon.

326.    The Defendants also owe the Plaintiffs a legal and equitable duty to account for the losses suffered by Plaintiffs due to Defendants' fraudulent collection of monthly mortgage payments under false pretenses and Defendants' failure to make restitution therefore.

327.    Furthermore, Defendants took final possession of some Plaintiffs' homes through foreclosure and severely and permanently deprived Plaintiffs of not only the equity remaining in their homes but of their actual physical residence following their refusal to comply with the terms of their modification agreements.

328.    To permit the Defendants to retain their unjust gains would be against equity and good conscience, and would ratify the illegal actions taken by the Defendants to the detriment of the Plaintiffs.

329.    In order to avoid the unjust enrichment and equity stripping practices of the Defendants, it should be ordered to pay back to each Plaintiff any and all monies unjustly received from him or her.  Such damages, including months of surreptitiously accepted trial payments should be determined at trial.

**COUNT IX**

**<u>Fraud in the Inducement</u>**

330.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

331.    Defendants fraudulently induced Plaintiffs to enter into unduly burdensome mortgage loans by misrepresenting or withholding material information.  In particular:

A.    Defendants misrepresented that certain Plaintiffs could afford the monthly payments on an adjustable-rate loan, when the payments would drastically increase beyond Plaintiffs' means absent some unforeseeable drastic increase in their income, or provided incorrect information to Plaintiffs regarding the fixed interest rate loan terms.

B.    Required insufficient financial documentation, or disregarded critical aspects of Plaintiffs' loan applications, to adequately determine a borrower's income and financial capability to make all payments through the life of a loan, when approving Plaintiffs for a mortgage.

C.    Tolerated exaggerated incomes of certain Plaintiffs because Defendants' underwriting guidelines permitted it to lend more money, allowing Defendants to garner more interest than would otherwise have been possible.

D.   Failed to disclose escrow charges for taxes and insurance from Plaintiffs'
disclosed monthly mortgage payment to make the payment seem more
affordable.

E.   Offered mortgage loans that Plaintiffs could not afford to service, but were
nonetheless made, because Defendants adequately collateralized such loans,
which amounts to improper asset-based lending.

F.   Falsely made assurances regarding not only the stability of the housing
market, but grossly exaggerated expected growth in housing prices.  This was
done to induce Plaintiffs to accept loan terms because it was encouraged that
there would always be an option to sell their homes at a profit, or else
refinance it with more favorable terms.

G.   Failed to disclose how a negative-amortization loan works, in particular how
the unpaid interest is added to the principal amount, causing it to drastically
increase.

H.   Failed to adequately disclose how an adjustable rate loan operates in that it
has monthly payments that continue to rise over the life of the loan.

332.   Upon information and belief, each such representation was a false representation
of material fact.

333.   These representations of material fact were made knowingly and for the purpose
of inducing the Plaintiffs to make the monthly note payments to Defendants.

334.   Defendants and its servicers and agents acted with scienter, and intended that the
Plaintiffs rely on the representations.

335.     Defendants and its agents and servicers knew the representations to be false at the time they were made to the Plaintiffs.

336.     Plaintiffs reasonably relied on these false representations made by Defendants and its agents and servicers to their detriment when accepting certain terms on their home mortgage loans.

337.     As a proximate result of Defendants' misrepresentations, Plaintiffs have suffered financial loss and severe mental anguish and emotional distress over facing the possible loss of their homes through foreclosure.

## COUNT X

### Violations of the Real Estate Settlement Procedures Act

338.     The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

339.     The subject transactions described above is, at most, federally related mortgage loans as defined in 12 USC § 2602(1), and therefore, is subject to the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 USC §§ 2601 et seq.

340.     RESPA prohibits any unearned fees, such that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed" pursuant to 12 USC § 2607(a).

341.     On information and belief, Defendants violated RESPA when engaging with Plaintiffs in that Defendants gave improper incentive kickbacks or premiums to loan officers and brokers in exchange for marketing and signing Plaintiffs to certain loans including those with adjustable rate terms, when they were not viable candidates, solely so Defendants could garner

greater interest plaintiffs.  Home appraisals were also falsely inflated by real estate brokers, often as a result of additional RESPA violations committed by Defendants.

342.    Prior to Plaintiffs home purchase closings, Defendants did not provide all necessary disclosures including a clear itemization of all charges imposed upon the borrower pursuant to 12 USC § 2603 or the required explanation of material terms including payments, penalties, prepayments, charges, appraisals, and costs pursuant to 12 USC § 2604(b)(1)

343.    Furthermore, Defendants also acted in defiance of 12 USC § 2605(e) by taking no action concerning the inquiries submitted with Plaintiffs' Qualified Written Request.  Defendants did nothing to resolve Plaintiffs' complaints over a failure to disclose information prior to closing, predatory lending practices and other abuses including accounting and ownership issues of the note payments.

344.    Defendants also did not provide any of the information requested such that Plaintiffs' could conduct their own investigation into the matters.  In the absence of Defendants' failure to take action to address these issues, Defendants have also not provided an adequate explanation for its refusal to do so.

345.    As a proximate result of Defendants' violations, Plaintiffs have suffered financial loss and severe mental anguish and emotional distress over facing the possible loss of their homes through foreclosure.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs pray the Court for the following relief against Defendants:

A.    An order declaring that Defendants' alleged acts and practices constitute a breach of contract;

B.      An order for Defendants' specific performance of its contractual obligations together with other relief required by contract law;

C.      An order declaring that Defendants are required under the doctrine of promissory estoppel to honor the loan modifications with Plaintiffs on terms represented in their loan modification agreements or rules of equity with Defendants;

D.      An injunction enjoining Defendants permanently from collecting on Plaintiffs' notes, which are backed by mortgages held by Defendants;

E.      Restitution to Plaintiffs and actual damages for injuries suffered by Plaintiffs, equity removed for foreclosed properties, and payments not entitled to be received by Plaintiffs;

F.      Restitution to Plaintiffs for mental anguish and emotional distress suffered by Plaintiffs as a result of Defendants' fraudulent modification practice which exists to direct borrowers towards foreclosure and inducement of Plaintiffs to enter into less than desirable loans;

G.      Actual and statutory damages pursuant to the various state consumer protection statutes;

H.      Actual damages resulting from Defendants' TILA violations;

I.      Actual damages resulting from Defendants' RESPA violations and additional damages as the Court may allow in an amount not to exceed $2,000.00 per Plaintiff, for violations of 12 USC § 2605(e) and treble damages pursuant to 12 USC § 2607

J.      Reasonable attorney's fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury to the extent authorized by law.


Dated:      April 12, 2013
              Brooklyn, New York

_____
Michael E. Herskowitz, Esq.
Michael A. Lehrman, Esq.
*Of Counsel to*
THE HOFFMAN LAW GROUP, P.A.
1999 Flatbush Avenue, Suite 201
Brooklyn, New York 11234
Tel: (718) 998-5088

*Attorneys for the Plaintiffs*